THE STATE v. PERRY LYNN, Appellant.

Division Two, October 27, 1902.

1. **Change of Venue:** JURISDICTION: IRREGULAR ORDER: NO EXCEPTION. Error in awarding a change of venue can not be corrected unless excepted to in the court which ordered the change. The erroneous order, being within the court's jurisdiction, is not a nullity.

2. ———: ———: ———: ———: REVIEWABLE ERROR. If the court which changed the venue to another county had jurisdiction of the offense and of the defendant, the order granting the change was not absolutely void, and, hence, the circuit court of the county to which the case was sent was not without jurisdiction to try the case; and if the order changing the venue was irregular or erroneous, in order for that irregularity or error to be available to defendant, he must have saved an exception to the action of the court at the time the order was made, and if he failed to save such exception, that action will not be reviewable on appeal.

3. ———: ———: ———: ———: CONSTITUTIONAL RIGHT: WAIVER. The defendant's constitutional right to a trial by jury of the county

State v. Lynn.

where the offense was committed may be waived; and this was done in this case by his failing to object and to save his exception to the action of the court in ordering a change of venue to another county and circuit.

4. **Continuance:** ABSENCE OF WITNESS. Where there have been two continuances in a case on the application of the defendant, he must, in order to convict the trial court of abusing its discretion in overruling his third application, show that he has not been remiss or negligent of his duty in the procurement of the attendance of a witness whose absence is the basis therefor.

5. ————: ERRONEOUS SERVICE. The subpoena for the absent witness was issued on July 19th, served on the wrong person on July 30th and the case was set for trial on August 26th, and it nowhere appears from the application for a continuance on account of the absence of such witness, when defendant first learned that the subpoena had not been served on the right person. *Held*, that in the absence of an averment of when defendant learned that the service had been upon the wrong person the court can not be held to have acted unwisely in overruling the application.

6. **Murder:** INSTRUCTION ON MOTIVE. Where defendant admits the killing and testifies that he shot deceased in self-defense, his own testimony furnishes the motive for the homicide, and, hence, it is not error to refuse an instruction which tells the jury that "if they fail to find any motive on the part of defendant for the commission of the crime charged against him then this ought to be considered with the other evidence in making up their verdict," since there is nothing upon which to predicate such an instruction.

Appeal from Washington Circuit Court.—*Hon. F. R. Dearing,* Judge.

AFFIRMED.

*Merrifield W. Huff, D. L. Rivers* and *Geo. M. Wilson* for appellant.

(1) The circuit court of the twenty-first judicial circuit had no jurisdiction to try this case, the same having been illegally sent from St. Francois county. R. S. 1899, secs. 2594, 2595 and 2597. (2) The defendant has a con-

stitutional right to trial in St. Francois county, which he has never waived or relinquished. Constitution, art. 2, sec. 22. (3) The trial court erred in overruling defendant's application and affidavit for a continuance, based on the absence of witness Casteel. State v. Dyer, 139 Mo. 199. (4) The court erred in refusing defendant's instruction 1 as to the effect of want of motive. (5) The court erred in instructing the jury as to any other degree of murder except the first degree. State v. Fitzgerald, 130 Mo. 407; State v. Mitchell, 98 Mo. 657.

*Edward C. Crow*, Attorney-General, for the State.

(1) The circuit court of Washington county had jurisdiction of the cause. The bill of exceptions in this case does not show that any exception to the change of venue was made in the circuit court of St. Francois county, from which the case was sent to the circuit court of Washington county. Ever since the case of Potter v. Adams, 24 Mo. 159, it has been the settled doctrine of this court that the only way to remedy an improper change of venue, is to save exceptions thereto, and in the court in which ordered. State ex rel. v. McKee, 150 Mo. 238; State v. Knight, 61 Mo. 373; State v. Dodson, 72 Mo. 283; Squires v. Chillicothe, 89 Mo. 226; Keen v. Schnedler, 92 Mo. 516; Stearns v. Railroad, 94 Mo. 317. For this reason the objection to the change of venue should not be reviewed in this court. It has been distinctly ruled that an application for a change of venue of a cause constitutes no part of the record unless made so by the bill of exceptions. State v. Ware, 69 Mo. 332. The presumption is that the order granting the change of venue is correct until the contrary appears. State ex rel. v. McKee, 150 Mo. 234. (2) The Constitution provides that the accused shall have a right to a speedy public trial by a jury of the county in which the crime was committed, but it is also true that if he desires to waive that right by applying for a change of

venue in the manner pointed out by the statute, he is at liberty to do so, and the constitutionality of this act authorizing a change of venue has been expressly sustained in the case of State v. Dyer, 139 Mo. 199.    (3)  It may be stated as a general rule that matters of continuances rest largely within the discretion of the trial court, and that unless it be made to appear that such discretion has been unwisely exercised, this court will not interfere.    State v. Maddox, 117 Mo. 667; State v. Tatlow, 136 Mo. 678; State v. Cochran, 147 Mo. 516.    The presumption is in favor of action of the court, and in order to convict it of error, it devolves upon the party complaining to show that the application for a continuance was improperly overruled, and that his rights have been prejudiced by reason thereof.    State v. Cochran, 147 Mo. 516.    (4)  The refusal of the instruction on motive was not reversible error, if error at all.    The absence of motive, even if disclosed by the evidence, is only a circumstance to be considered by the jury in favor of the prisoner.    This is the extent of the weight to be given to it.    The absence of an apparent motive is not conclusive of the innocence of the defendant.    State v. David, 131 Mo. 397.

BURGESS, J.—Defendant was convicted in the circuit court of Washington county of murder in the second degree, and his punishment fixed at ninety-nine years imprisonment in the State penitentiary, for having shot to death with a pistol at St. Francois county on May 13, 1900, one William Martin.    He appeals.

It appears from the record that defendant and deceased were brothers-in-law, and at the time of the homicide occupied, with their respective families, different parts of the same house, situated on the farm of the Bonne Terre Farm and Cattle Company in St. Francois county.    Deceased had been in the service of said company and in the occupancy of said house for about two years when defendant, with his

permission, moved into a part of said house with his family, consisting of his wife, himself and two boys named Jeff and Willie Lynn, aged respectively about nine and six years. About two weeks before the homicide occurred, deceased and his wife, who is a sister of defendant, wanted him to move from the premises, and from that time trouble began between the families and continued to grow worse, finally culminating in the death of Martin. Mrs. Martin testified that on several occasions within a few weeks before the homicide she heard defendant threaten to kill her husband, and that she told him about it.

She also testified that thereafter, on the Sunday morning of the homicide, the defendant came to the door of his part of the house cursing and swearing and threatening that he would kill Martin, and that she became alarmed lest he would do so, and went out in the yard and met her husband and son who were then coming toward the house, and that when they approached the house the defendant came out with a pistol in his hand cursing and swearing at the deceased, threatening to shoot him, to which deceased replied, "Oh, I guess not." That defendant then immediately fired his pistol at deceased, the ball penetrating the head just above the right eye and passing through the head, from the effects of which deceased fell to the ground, and expired about twenty-four hours thereafter without ever regaining consciousness.

The evidence on the part of the defendant showed that defendant said he would move from the premises as soon as he could get a house to go into and that Joel Lynn, his brother, made a trip to Bonne Terre to try to get a house for him, but failed in so doing. Defendant testified that on the morning of the homicide deceased was out chopping wood, and that Martin's wife became angry at defendant's little boy and called the deceased to the house, saying that now is as good a time as any to kill Perry Lynn, and that the deceased came to the house with his ax in his hand, which was a

double-bit ax, and that he approached the kitchen door on that side of the house in which defendant lived, and that defendant's wife and little boy were about the doorway and that defendant went to the doorstep and said to the deceased: "Go away, I don't want any trouble with you. I will get out of the house as soon as I can find one;" but the deceased kept advancing and stepped up on the step as though to come into the house, with the ax drawn, and that defendant retreated to a safe drawer three or four feet away and secured a pistol and fired at the deceased, who fell backwards from the steps. The defendant also introduced evidence to the effect that deceased had made threats against him. The defendant's brother swore to that effect, as did also another witness, and that these threats were communicated to the defendant.

Deceased was unarmed at the time he was shot. Immediately after the shooting defendant fled to Clay county, Arkansas, where he was afterwards apprehended and returned to St. Francois county.

The court instructed for murder in the first and second degrees.

At the November term of the St. Francois Circuit Court defendant filed his motion for a change of venue, alleging as ground therefor the prejudice of the judge against him, and asking that the venue of said cause be changed to some court or judge where said prejudice did not exist. The record recites that it "appearing to the satisfaction of the court that no special judge will agree to try said cause if elected, it is by the court ordered that said cause be and the same is set down for trial on the 26th day of November, 1900, and Judge Dearing of the 21st judicial circuit invited to sit and try said cause."

On said 26th day of November, 1900, there was also entered of record in the circuit court of St. Francois county, an order which recites that Judge Dearing, "having been duly notified and requested to appear and preside over this court,

and try this cause, and the said F. R. Dearing, judge as aforesaid, now failing to appear or to advise the judge of this court as to the time that it would be most convenient for him to appear and try this cause; it is therefore ordered by the court that the venue of this cause be changed to the county of Washington in the 21st judicial circuit of this State."

At the March term, 1901, of the Washington Circuit Court the cause was continued until the August term of said court. On August 26th defendant filed a plea to the jurisdiction of the court which was overruled.

Defendant also filed a motion for a continuance because of the absence of H. R. Casteel, a competent and material witness for the defendant. Which motion the court overruled and defendant duly excepted.

On August 28, 1901, before the trial of said cause was begun, defendant objected to said "court exercising any jurisdiction in this case except to remand it to the circuit court of St. Francois county for trial, which he moved the court to do for grounds aforesaid; motion urges that the circuit court of St. Francois county did not take proper and legal steps as directed by the statute to secure to defendant a trial in St. Francois county where said alleged crime was committed, and where the Constitution guarantees him a trial; that after his affidavit disqualifying the judge of the circuit court of St. Francois county from trying the cause, it was the [his] duty to set the case for trial and then in case the judge called in to try said cause failed to appear, to reset it and call in the same or a different judge to try the cause." Which motion was overruled, to which action of the court the defendant duly excepted.

It is said that the circuit court of Washington county had no jurisdiction to try this case, for the reason that the circuit court of St. Francois county was without authority under the circumstances to transfer it to another county and

·circuit. But as the circuit court of St. Francois county had jurisdiction of the offense, and of the defendant, the order ·changing the venue of the cause was not absolutely void, but was at most irregular or erroneous, and, in order to be available to defendant he should have saved an exception to the action of the court at the time the order was made. [Potter v. Adam's Exrs., 24 Mo. 159; State v. Knight, 61 Mo. 373; State v. Dodson, 72 Mo. 283; Squires v. Chillicothe, 89 Mo. 226; Keen v. Schnedler, 92 Mo. 516; Stearns v. Railroad, 94 Mo. 317; State ex rel. v. McKee, 150 Mo. 233.] And having failed to do so the action of the court with respect thereto is not reviewable by this court. In the case last cited it is held that "error in awarding a change of venue can not be corrected unless excepted to in the court which ordered the change, since the erroneous order, being within the court's jurisdiction, is not a nullity." From the authorities cited this seems to be the well-settled rule in this State.

It may be conceded that defendant had a constitutional right to a trial by a jury of the county where the offense was committed (sec. 22, art. 2, State Constitution; State v. Dyer, 139 Mo. 209), but that right, like the right of a defendant to meet the witnesses face to face, as provided by the section of the Constitution, supra, may be waived (State v. Wagner, 78 Mo. 644), and this defendant did by failing to object and to save his exception to the action of the court in ordering a ·change of the venue of the cause to another county and circuit.

It is said that the court erred in overruling defendant's motion for a continuance based on the absence of the witness Casteel. It appears from the record that on June 12, 1900, the cause was continued on the application of defendant, and that on March 5, 1901, an application for a continuance was filed by defendant in the circuit court of Washington county, which was overruled, and the case set for trial on the 11th day of March next following; that thereafter on the day last named another application for a continuance was filed by defendant,

which was also overruled; that on the 12th of March, 1901, another application for a continuance was filed by the defendant and sustained, and the cause continued to the next regular term; that finally on the 26th day of August, the same being the first day of the August term, 1901, of the Washington Circuit Court, another application for a continuance was filed by the defendant, which was also overruled. It thus appears that the case was twice continued on the application of defendant prior to the time the application in question was made and overruled. It is well settled in this State that matters of continuance are largely within the discretion of the trial court, and unless it be made to appear that such discretion has been unwisely exercised, this court will not interfere. [State v. Maddox, 117 Mo. 667; State v. Tatlow, 136 Mo. 678; State v. Banks, 118 Mo. 117; State v. Riney, 137 Mo. 102; State v. Cochran, 147 Mo. 504.] When the facts disclosed by the record are considered, we do not think it can be held that there was any abuse of discretion by the court in overruling the application for a continuance, but that it may be well justified upon the ground of the want of diligence by defendant in procurement of the attendance of the witness. When there have been two continuances by a defendant in a case of this character, as in the case at bar, and a third application is made for the same purpose, the defendant must show that he has not been remiss or negligent of his duty in the procurement of the attendance of a witness whose presence is desired, and upon account of whose absence the application is made. Now, the subpoena for the absent witness was issued on July 19, 1901, and served on July 30, 1901, but upon the wrong person, while the case was set for trial on the 26th day of August next thereafter, and it nowhere appears from the application when defendant first learned that the subpoena had not been served on the proper person. For all we know, defendant may have known on the very day of its service that it had been served on the wrong person, or if not then, that he

may have known it in ample time to have had another sub-
poena issued for and served upon the proper person, and in
the absence of some averment of this character in the applica-
tion, the court can not be held to have acted unwisely in over-
ruling the motion.

The point is made that the court erred in refusing an
instruction asked by defendant, numbered one, which told
the jury that in case they failed to find any motive on the
part of the defendant for the commission of the crime charged
against him, then this ought to be considered with the other
evidence in making up their verdict. There was no error in
refusing this instruction. There was nothing upon which
to predicate it. Defendant admitted the killing and testified
that he shot deceased in self-defense, and to save his own life.
This, according to defendant's own testimony, furnished the
motive for the homicide.

There was no error in instructing the jury for murder
in both degrees, as the circumstances disclosed by the evidence
fully justified such a course.

Finding no reversible error in the record, we affirm the
judgment. All concur.