STATE vs. FRANCIS S. PEABODY.

WASHINGTON—JANUARY 4, 1904.

PRESENT: Stiness, C. J., Douglas and Dubois, JJ.

(1)  *Criminal Complaint.  Locus of Offence.*

A criminal complaint alleging nonsupport of minor children, by a defendant, who, during the time covered by the complaint was in Warwick, in Kent county, while the children were in Westerly, in Washington county, is properly brought in Westerly.

(2)  *Evidence.*

In a criminal complaint for nonsupport, evidence as to the physical condition of defendant is not material where it appears that defendant had employment and did not claim to be in receipt of a lesser income on account of his condition.

CRIMINAL COMPLAINT.  Heard upon defendant's petition for a new trial, and petition denied.

DUBOIS, J.  The defendant, convicted of nonsupport under a complaint in which he was described as of Warwick, in the county of Kent, and by which he was charged with neglecting to provide for his three minor children, according to his means, at Westerly, in the county of Washington, from the first day of December, A. D. 1900, continuously up to the ninth day of August, A. D. 1901, has brought his petition for a new trial, upon the ground that the verdict was against the evidence; that the justice presiding at the trial erred in his rulings and charge, and conducted himself during the trial in a manner prejudicial to the rights of the defendant.

We are unable to determine, after a careful review of the transcript of testimony given at the trial, that the verdict is unsupported by the evidence.  There was evidence that within the period covered by the complaint the defendant did not provide for his children; and while there was also evidence that he did furnish some support for them within that time, the jury were required to determine as a fact whether in so doing he provided for them according to his means.  The evidence concerning his ability or means to support his children

was conflicting, and the jury have decided the question adversely to him. In cases of conflicting evidence or contradictory testimony a verdict will not be disturbed except for palpable mistake or misconduct of the jury.

(1)    It is strenuously argued in behalf of the defendant that the complaint should have been dismissed because the evidence disclosed the fact, substantially alleged in the complaint, that he was in Warwick in Kent county, while his children were in Westerly in Washington county, during the period covered by the complaint; and that if he was guilty at all he was guilty in Warwick but not in Westerly, and should have been complained of in Warwick. The claim is untenable.

The place where an injury is done is the place where the crime is committed. If one personally out of the country puts in motion a force which takes effect in it, he is answerable where the evil is done though his presence be elsewhere. Where a man standing beyond the outer line of our territory, by discharging a ball over the line kills another within it; or, himself being abroad, circulates libels here, or in like manner obtains here goods by false pretences; or does any other crime in our own locality against our laws; he is punishable, though absent, the same as if he were present. Bish. Crim. Law, 8th ed. § 110, and cases cited.

By parity of reasoning one is answerable for his neglect in the place where others suffer in consequence.

We do not find that the presiding justice erred in the rulings or charge complained of.

(2)    As to the first exception, taken to the exclusion of a question calling attention to the defendant's physical disability, it must be overruled.

If the defendant had been without employment during the time charged, and had desired to show why he could not work, his physical condition might have been of importance; but as he was employed, and did not claim to be in receipt of a lesser income on account of his conditon than he would have been had he been perfectly sound, the fact was of little consequence as an aid to the jury in the proper determination of the case.

The second exception was taken during the direct examination of Thomas L. Peabody, brother of and a witness for the defendant, as appears from the following extract from the record:

"Q. Did you or not, as the agent of your brother, agree with Mr. Burdick as to the compensation he should receive for taking care of the children? A. No; that was with Mr. West.

"Q. From what they had said do you know whether that agreement was made or not? (Ruled out.)

"Q. Do you know anything about that agreement? A. It was with Mr. West. (Ruled out.)

"Mr. Peabody takes an exception."

From the foregoing it appears that if an agreement was made it was made with Mr. West, and it does not appear that the witness was present at the time, in fact, he was not asked whether he was present or not. What he began to state appeared as hearsay, and was properly excluded.

As to the question, "When you left Westerly, under whose advice did you leave?" it was clearly irrelevant and inadmissible; his leaving with or without advice did not absolve him from his duty towards his children; and the question was properly excluded.

There is nothing in the refusals of the judge to charge as requested of which the defendant can justly complain. The jury were properly instructed in the law; and no exception lies to a refusal to charge in the exact language requested when the law contained in such request to charge has been substantially given to the jury. A critical examination of the record fails to sustain the claim of the defendant that the remarks, bearing, and conduct of the presiding justice prejudiced the jury against him.

Our attention has been particularly directed to the following portion of the charge, which is regarded by the defendant as especially obnoxious: "It is not my intention to burden you very long with a discussion of this testimony or the law applicable to it. In fact, the remarks of the court have been numerous during the progress of the cause, and so numerous

have these replies been that perhaps you have obtained some information as to the way the court feels." To appreciate the significance of the remarks alluded to it is only necessary to refer to some of them. On page 3 of the record, we find the following:

"THE COURT: The only issue here is—what were this man's means, and what did he do for the children? We are not trying any other action here."

On page 4, after the following question and answer:

"Q. Did the children fairly suffer for the necessities of life? A. At times they did—most of the time.

"THE COURT: If he left anything, tell just that, you need not go any further."

On page 7, after this question:

"Q. Didn't Mr. Charles H. Holdridge let some of the family have some money on the children's account?

"THE COURT: Unless it came from Francis Peabody you need not answer."

On page 10, after the question:

"Q. Did you also make a complaint to anybody else but Ethan Wilcox?

"THE COURT: That is not material."

On pages 13 and 14, after the question:

"Q. Was there suffering for the want of food and clothes during that time.

"THE COURT: I don't know that it is necessary to go into that." And also, on page 14:

"THE COURT: The question is what did the father do and what was he able to do."

The court evidently felt that he had called the attention of the counsel on both sides of the case to the issue so frequently that the jury could not have failed to observe it, and that to reiterate the same to any extent in his charge would be work of supererogation. While we find nothing in the conduct of the court to criticise, we feel obliged to suggest to the counsel on both sides, who have in their briefs indulged in numerous personalities, that such conduct is highly improper; and

that the court hereafter will refuse to consider briefs of that character.

New trial denied, and case remanded to the Common Pleas Division for further proceedings.

*A. B. Crafts*, for State.

*Thomas H. Peabody & Nathan B. Lewis*, for defendant.