### NEW YORK CENT. & H. R. R. CO. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit.    December 15, 1908.)

#### No. 23.

1. CARRIERS (§ 30*)—INTERSTATE COMMERCE—"RATES IN FORCE."

"Rates in force," to which Interstate Commerce Act Feb. 4, 1887, c. 104, § 1, 24 Stat. 379 (U. S. Comp. St. 1901, p. 3154), applies, are not limited to rates under which transportation has actually taken place, but are those which the carrier has established as its present charges for transportation, as distinguished from those which are obsolete, tentative, or perhaps only to take effect in the future. They are rates open to public inspection and on which shipments may be made, if offered.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 81; Dec. Dig. § 30.*]

2. CRIMINAL LAW (§ 113*)—INTERSTATE COMMERCE—RATES—FAILURE TO PUBLISH—PROSECUTION—VENUE.

Interstate Commerce Act Feb. 4, 1887, c. 104, § 6, 24 Stat. 380 (U. S. Comp. St. 1901, p. 3156), in force in and prior to 1904, required the filing of schedules of interstate rates with the Interstate Commerce Commission; and Elkins Act Feb. 19, 1903, c. 708, § 1, 32 Stat. 847 (U. S. Comp. St. Supp. 1907, p. 880), made the willful failure to comply therewith a misdemeanor punishable in any federal court having jurisdiction of crimes within the district in which the offense was committed. Held, that the offense of failing to file a rate schedule with a commission is committed in Washington, where the commission has its office, and hence must be prosecuted there.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 232; Dec. Dig. § 113.*]

3. CRIMINAL LAW (§ 113*)—INTERSTATE COMMERCE—OFFENSES—VENUE.

Elkins Act Feb. 19, 1903, c. 708, § 1, 32 Stat. 847 (U. S. Comp. St. Supp. 1907, p. 880), in force in 1904, provided that every violation of Interstate Commerce Act Feb. 4, 1887, c. 104, § 1, 24 Stat. 379 (U. S. Comp. St. 1901, p. 3154), should be prosecuted in the district in which the violation was committed or through which the transportation may have been conducted. Held, that the last clause of such provision had no application to a carrier's violation of the act by failing to file a rate schedule with the Interstate Commerce Commission; transportation being no element of such offense.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 232; Dec. Dig. § 113.*]

4. CRIMINAL LAW (§ 113*)—INTERSTATE COMMERCE—OFFENSES—VENUE—"CONTINUING OFFENSE."

Elkins Act Feb. 19, 1903, c. 708, § 1, 32 Stat. 847 (U. S. Comp. St. Supp. 1907, p. 880), in force in 1904, provides that if a violation of Interstate Commerce Act Feb. 4, 1887, c. 104, § 1, 24 Stat. 379 (U. S. Comp. St. 1901, p. 3154), and its amendments occurs in one federal district and is completed in another, it may be dealt with or in either jurisdiction,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

as though the offense had been actually and wholly committed therein. *Held*, that such provision was applicable only to a "continuing offense," viz., a continuous unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force, however long a time it may occupy, and did not apply to a violation of the act by the carrier's failure to file a rate schedule with the Interstate Commerce Commission.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 232; Dec. Dig. § 113.*

For other definitions, see Words and Phrases, vol. 2, p. 1510.]

In Error to the District Court of the United States for the Western District of New York.

For opinion below, see 153 Fed. 630.

Hoyt & Spratt (William B. Hoyt and Alfred L. Becker, of counsel), for the plaintiff in error.

S. Wallace Dempsey, Sp. Asst. U. S. Atty.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

NOYES, Circuit Judge. The defendant railroad company, plaintiff in error, was indicted and tried in the Western district of New York for the offense of willfully failing to file with the Interstate Commerce Commission certain schedules of rates and charges, as required by the act to regulate commerce. The particular rate which it was charged that the defendant failed to file was one, made pursuant to a common arrangement with other carriers covering interstate transportation, of nine cents per hundred pounds for the carriage of petroleum and its products from Rochester, N. Y., to Norwood, N. Y., when consigned to points beyond. The defendant, having been found guilty, brings this writ of error, and urges at the outset that the offense charged was not committed in the Western district of New York, and consequently that the District Court for that district had no jurisdiction.

Section 6 of the interstate commerce act as it was in force in and prior to 1904, when it is charged the offense was committed, provided as follows:

"Every common carrier subject to the provisions of this act shall print and keep open to public inspection schedules showing the rates and fares and charges for the transportation of passengers and property which any such common carrier has established and which are in force at the time upon its route. * * * Every common carrier subject to the provisions of this act shall file with the commission hereinafter provided for, copies of its schedules of rates, fares, and charges which have been established and published in compliance with the requirements of this section, and shall promptly notify said commission of all changes made in the same." Act Feb. 4, 1887, c. 104, 24 Stat. 380 (U. S. Comp. St. 1901, p. 3156).

Section 1 of the Elkins act, as in force in 1904, provided:

"The willful failure upon the part of any carrier subject to said acts [the interstate commerce act and its amendments] to file and publish the tariffs of rates and charges as required by said acts * * * shall be a misdemeanor, and upon conviction thereof the corporation offending shall be subject to a fine. * * * Every violation of this section shall be prosecuted in any court of the United States having jurisdiction of crimes within the district in which such violation was committed or through which the transportation may have been conducted; and whenever the offense is begun in one juris-

diction and completed in another it may be dealt with, inquired of, tried, determined and punished in either jurisdiction in the same manner as if the offense had been actually and wholly committed therein." Act Feb. 19, 1903, c. 708, 32 Stat. 847 (U. S. Comp. St. Supp. 1907, p. 880).

Section 19 of the interstate commerce act (24 Stat. 386 [U. S. Comp. St. 1901, p. 3169]) provides that the principal office of the commission shall be in the city of Washington, and, although provision is made for sessions of the commission elsewhere, it does not appear that any other offices have been established.

Assuming, then, that the rate in question had been established and published, and that the defendant was bound to file with the commission a copy of the schedule containing it, where was it bound to file it? Manifestly, in the office of the commission in Washington. It could be filed with the commission there. No provision is made by which it could be filed elsewhere. The duty of the defendant being to file the schedule in Washington, where did the omission of duty— the violation of the statute—take place? Manifestly, in Washington. When an offense consists of an omission to do an act required by law, the commission of the offense necessarily takes place where the act ought to have been done. The offense of failing to file the schedule with the commission having been committed in Washington, in the District of Columbia, the District Court for the Western district of New York had no jurisdiction unless it was conferred by the venue provision in the section of the Elkins act already quoted. No other statute goes further than that.

The government contends that this provision does confer jurisdiction by providing that violations of such section may be prosecuted, not only in the district where they were committed, but in districts "through which the transportation may have been conducted." The applicability of this last clause to many of the offenses covered by the section is obvious. Thus a prosecution for accepting a rebate for transportation may be had either in the district where it was accepted or in a district through which the transportation took place. In such a case, transportation is clearly an element of the offense.

But it is said that the clause is also applicable in a case like the present, and that transportation is an element of the offense of failing to file an established rate. It is pointed out that the provisions of the interstate commerce act requiring the publication and filing of established rates apply only to those in force, and it is said that a rate is not in force unless transportation has actually taken place under it. This contention seems to us to be without foundation. Rates in force are those which a carrier establishes as its present charges for transportation, as distinguished from those which are obsolete, tentative, or perhaps only to take effect in the future. Rates in force are rates in effect—rates open to public inspection and upon which shipments may be made, if offered. We think that a rate is in force before transportation takes place thereunder.

Omission must be the correlative of duty. If the failure to publish and file a rate is not a violation of the statute until transportation has taken place, then the duty to publish and file a rate does not arise until transportation has taken place. And yet one of the primary purposes

of the interstate commerce act was to secure the making public of rates to intending shippers. Said section 6 of the interstate commerce act, as formerly existing, further provided that, in case any carrier should neglect or refuse to file or publish its schedules of rates, the commission might apply for an injunction "to restrain such carrier from receiving or transporting property until such common carrier has complied with the aforesaid provision of this section of this act." If the government's contention is correct, this provision was practically a nullity. An injunction against transportation which cannot be issued until after transportation has taken place is not likely to prove effective. Section 6 of the present interstate commerce act—substituted by the Hepburn act in the place of the section which we have examined—makes it unlawful for a carrier to engage in transportation unless its rates have been published and filed. It is now an offense to transport without a filed rate, as well as to fail to file a rate. Under the statute as it now stands prosecutions may be instituted in any district through which the transportation may have been conducted. But we cannot read the provisions of the new statute into the essentially different provisions of the old.

It is further urged that this prosecution was properly instituted in the Western district of New York under the clause of the Elkins act, already quoted, providing that, where the offenses to which it applies are begun in one jurisdiction and completed in another, they may be inquired into and punished in either. This provision applies to a continuing offense—"a continuous, unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force, however long a time it may occupy. Where such an act or series of acts runs through several jurisdictions, the offense is committed and cognizable in each." Armour Packing Co. v. United States, 153 Fed. 1, 5, 82 C. C. A. 135, 137, 14 L. R. A. (N. S.) 400.

But the failure to file a rate schedule with the Interstate Commerce Commission is in no sense a continuous offense running into different districts. The offense consists in the failure to do a single act in a single place, to wit, to file a schedule in Washington. The preparation of the schedule is an entirely lawful act, and wholly distinct from the duty or omission of duty to file it. The work of preparation is ended before the duty to file begins. The case is not at all analogous to the offense of presenting a false claim in one district which was prepared in another. There the unlawful preparation might well be considered an essential part of the unlawful presentation, and the commission of the offense as having been commenced where the preparation took place. The distinction is between a continuous unlawful act and an unlawful act following a completed lawful act.

For these reasons we hold that these proceedings should have been instituted in the District of Columbia, and not in the Western district of New York, and consequently that the District Court for such district was without jurisdiction.

The judgment of the District Court is reversed.